UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 25-6900 JGB (JCx)** | Date | August 14, 2025 |
|---|---|---|---|
| Title | *Victor Amado Rodriguez-Flores v. F. Semaia et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Phyllis A. Preston |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Bashir Ghazialam | Erin Choi |

**Proceedings:** Order GRANTING Plaintiffs' Ex Parte Application for a Temporary Restraining Order and ISSUING a Preliminary Injunction (Dkt. No. 9)

Before the Court is Petitioner Victor Amada Rodriguez-Flores's ex parte application for a temporary restraining order. ("Application," Dkt. No. 9.) After considering all papers filed in support of the Application, the Court converts the Application into a request for a preliminary injunction and **GRANTS** the Application and **ISSUES** a preliminary injunction.[1]

### I. BACKGROUND

Petitioner, a Guatemalan national, first entered the United States in 2003 after being attacked by gang members. (App. at 14.) The parties dispute what happened next. Petitioner states he remained in the United States until 2009. (Id. at 14–15.) According to the government, Petitioner was apprehended in 2003 when attempting to enter the United States and voluntarily returned to Guatemala then. ("Negrete Decl.," Dkt. No. 12-1.) The parties, however, agree that Petitioner returned to Guatemala at some point before 2010. According to Petitioner, upon his return, gang members came for Petitioner and burned down his house in 2010. (App. at 14.) The parties are in agreement that Petitioner returned to the United States in 2010. (Id.; Negrete Decl. ¶ 6.) The accounts again diverge. Petitioner states he has been residing in the United States continuously since 2010. (App. at 15.) The government states that in March 2010, Petitioner was apprehended near Tecate, California, processed for expedited removal, and removed to Guatemala in April 2010. (Negrete Decl. ¶ 6.) According to the government,

---

[1] The Court held a hearing on August 14, 2025 where it considered argument from the parties as to why a preliminary injunction should not issue.

Petitioner was again apprehended in June 2010 near Hidalgo, Texas, his prior removal order reinstated, and removed to Guatemala. (Id. ¶ 7.)

The parties agree that Petitioner was present in the United States in 2019, but the record is murky as to when he returned. In October 2019, Petitioner was apprehended and he indicated he was afraid of returning to Guatemala. (Id. ¶¶ 8–9; App. at 15–16.) An asylum officer found Petitioner had a reasonable fear of returning and his case was forwarded to an immigration judge in November. (Negrete Decl. ¶ 10.) In March, the immigration judge denied Petitioner's application for relief and ordered him removed. (Id. ¶ 11.)

In April 2020, the immigration judge ordered Petitioner released on bond. (Id. ¶ 13.) In December 2020, the Board of Immigration Appeals (BIA) dismissed Petitioner's appeal of the immigration judge's denial of relief. (Id. ¶ 14.) Petitioner requested reconsideration of the appeal. (Id. ¶ 15.) Shortly thereafter, in January 2021, Petitioner also filed an appeal in the Ninth Circuit (Dkt. No. 20-73795), where he also requested a stay of removal. (Id. ¶ 15.) In October 2021, the BIA vacated its previous order, reinstated Petitioner's appeal, and then denied his appeal again. (Id. ¶ 17.) In light of the BIA's decision, the previous appeal was dismissed, and Petitioner filed a new appeal in the Ninth Circuit. Petition for Review, Rodriguez Flores v. Bondi, Dkt. 21-1119 (9th Cir. Nov. 10, 2021), Dkt. No. 1. The Ninth Circuit stayed Petitioner's removal order "until the mandate issues unless the court orders otherwise." Order, Rodriguez Flores v. Bondi, Dkt. 21-1119 (9th Cir. Jan. 4, 2022), Dkt. No. 14. In March 2022, the government moved to administratively close the case, and the Court granted the motion, specifying that "[t]his order is not a decision on the merits and has no impact on any stay of removal" and that "[n]o mandate will issue." Order, Rodriguez Flores v. Bondi, Dkt. 21-1119 (9th Cir. Feb. 25, 2022), Dkt. No. 18.

In March 2025, the government moved to reopen the case, and the Ninth Circuit granted the request and ordered briefing. Order, Rodriguez Flores v. Bondi, Dkt. 21-1119 (9th Cir. Apr. 2, 2025), Dkt. No. 22. Petitioner has submitted his brief and the matter remains open.

In May 2025, Petitioner filed a petition for a U-visa after being an indirect victim of crime and assisting law enforcement. (App. at 18–19.)

While on bond Petitioner had no criminal record and timely checked in for his appointments. (App. at 19.) Petitioner is the sole provider for his wife and children. (App. at 17.) According to various letters of support, Petitioner has made an impact in his community and church. (App. at 16–17.)

On June 7, 2025, Petitioner was called for and appeared for a nonscheduled check-in in Los Angeles. (App. at 19.) At the appointment, Petitioner was detained and taken to the Adelanto Detention facility. (Negrete Dec. ¶ 21.) Petitioner states he did not receive a reason for his detention until June 26, 2025, when his sponsor received a "Notice of Immigration Bond Cancellation" dated June 7, 2025. (App. at 19.) The government states Petitioner was served

with a "Notice of Intent/Decision to Reinstate Prior Order" on June 7, 2025. (Negrete Decl. ¶ 22.)

On July 3, 2025, Petitioner filed a motion for custody redetermination with the immigration court at Adelanto. (Id. ¶ 23.) On July 11, the immigration judge denied bond under 8 C.F.R. § 1236.1 stating the "Court does not believe, under the circumstances, it has jurisdiction to entertain a bond. Respondent re-detained with administratively final order of removal. Respondent detained only 34 days since DHS re-detention." (App. Ex. K.)

Petitioner filed a habeas petition under 28 U.S.C. § 1141 on July 28, 2025. ("Petition," Dkt. No. 1.) Petitioner then filed an ex parte application for a temporary restraining order on August 7, 2025. (App.) The government answered the petition on August 8, and opposed the application on August 11. ("Answer," Dkt. No. 8; "Opp'n," Dkt. No. 12.) Petitioner replied on August 12. ("Reply," Dkt. No. 13.)

## II. LEGAL STANDARD

A temporary restraining order may be issued upon a showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 61(b)(1)(A). The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction. See Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. Lockhead Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 690 (2008) (citations omitted). An injunction is binding only on parties to the action, their officers, agents, servants, employees, attorneys, and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d).

Courts in the Ninth Circuit may consider the Winter factors on a sliding scale and grant an injunction where the plaintiff raises "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff" if "the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (noting that the latter two elements are "the other two elements of the Winter test").

//
//
//

## III.  DISCUSSION

To secure a TRO and a preliminary injunction, Petitioner must show that he is likely to succeed on the merits, likely to suffer irreparable harm, and that the balance of equities and the public interest tip in their favor. Winter, 555 U.S. at 20.[2] Likelihood of success on the merits "is a threshold inquiry and is the most important factor." Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020).

### A.    Likelihood of Success on the Merits

Here, Petitioner has shown a likelihood of success on the merits. It is unclear the basis for Petitioner's detention. On one hand, Petitioner suggests that he was detained pursuant to a revocation of bond under 8 U.S.C. § 1226(b), which governs detention pending a determination on removal. On the other, the government suggests Petitioner is detained under 8 U.S.C. § 1231(a)(2), which governs detention where a noncitizen is subject to a final removal order.

8 U.S.C. § 1231(a)(2) is not applicable. The government contends Petitioner's detention is mandatory because 8 U.S.C. § 1231(a)(2)(A), states "[d]uring the removal period, the Attorney General shall detain the alien." But when a removal order is pending judicial review, and "a court orders a stay of the removal of the alien," the "removal period" does not begin until the "date of the court's final order." There has been no final order by the Ninth Circuit, and so § 1231 does not mandate detention.

Under 8 U.S.C. § 1226(b), however, the government can revoke Petitioner's bond "at any time." But that power has been limited by the BIA, which has held that "where a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance." Matter of Sugay, 17 I. & N. Dec. 637, 640 (BIA 1981). In April 2020, Petitioner was released on bond by an immigration judge, and is subject to the "change of circumstance" proviso.

In any event, the Court now turns to Petitioner's procedural due process claim. He claims that his arrest without a pre-deprivation hearing violated his liberty interest in remaining free out on bond. (App. at 23–24.) Due process claims proceed in two steps, first, determining if the Due Process Clause protects a petitioner's liberty interest, and second, to what procedures is a petitioner entitled to protect that right.

Petitioner's right to remain out on bond is a liberty interest protected by the Due Process Clause. Courts in this circuit have routinely held that noncitizens on bond have a "protected liberty interest in remaining out of custody." Pinchi v. Noem, No. 5:25-CV-05632-PCP, 2025

---

[2] Because Petitioner was not detained at "the last, uncontested status which preceded the pending controversy," the Court need not apply the higher standard for a mandatory injunction. Regents of the Univ. of Cal. v. Am. Broad. Cos., 747 F.2d 511, 514 (9th Cir. 1984)); Kuzmenko v. Phillips, No. 25-CV-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025).

WL 2084921, at *3 (N.D. Cal. July 24, 2025) (collecting cases); see also Trump v. J. G. G., 145 S. Ct. 1003, 1006 (2025) (noncitizens protected by due process clause).  In other words, though the government may have discretion over their release, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release."  Pinchi, 2025 WL 2084921, at *3 (citation modified).

      The Court now turns to the question of what procedures are appropriate to protect Petitioner's liberty interest.  Under Mathews v. Eldridge, the Court considers three factors.  "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. 319, 335 (1976).

      Under the first factor, Courts have regularly described a petitioner's interest in remaining out of custody as "substantial."  Diaz v. Kaiser, No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025).  The weight of the factor grows as a party remains out on bond for an extended period of time.  Morrissey v. Brewer, 408 U.S. 471, 482 (1972).  Here, Petitioner was out on bond for five years before his re-arrest and has built substantial community connections during that time.  Petitioner's interest is significant.

      As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is high with only a post-arrest detention hearing instead of a pre-detention hearing.

      The government has provided scant details about the procedural protections at Petitioner's appearance before the Immigration Judge.  According to Petitioner, this was not a hearing to determine, under Matter of Sugay, whether there was a change in circumstance so as to justify rearrest and detention.  In his account, he never received a hearing of the type he now requests, one to determine if there is any valid basis for civil immigration detention, that is, preventing flight or protecting against danger to the community.  Zadvydas v. Davis, 533 U.S. 678, 690 (2001).  The immigration judge only stated, without basis, he was without jurisdiction to consider Petitioner's challenge to his current detention.  (App. Ex. K.)  In other words, Petitioner never received a hearing on whether his current detention is constitutional.

      Had petitioner received a pre-arrest detention hearing, there would need to be a determination as to whether there were changed circumstances to justify his rearrest.  The parties would be free to dispute whether, as the government now argues, the Ninth Circuit's reopening of the case constituted a change circumstance, and whether Petitioner met the requirement for civil immigration detention. As the Supreme Court has explained, the baseline requirement is a "hearing before the State deprives a person of liberty," not after.  Zinermon v. Burch, 494 U.S. 113, 127 (1990).

The government has not explained how the hearing Petitioner received was fit for purpose—that is, how it protected the liberty interest he now seeks to protect. It is unclear from the record that Petitioner received a hearing where he could make the arguments relevant to the rights invoked in his petition.[3]

As to the third factor, the government has articulated no specific interest in conducting a detention hearing only after detaining Petitioner, instead of before. The only changed circumstance the government cites is the reopening of Petitioner's Ninth Circuit case. Petitioner has shown he has diligently shown up to his proceedings (indeed, his current arrest being one such situation), and that he is not a danger to the community. Indeed, "[a]n IJ already has found as a factual matter that [Petitioner] poses no risk of danger or flight." Meza v. Bonnar, No. 18-cv-02708-BLF, 2018 WL 2151877, at *3 (N.D. Cal. May 10, 2018). The government has made no showing otherwise.

In short, petitioner is entitled to a pre-detention hearing where the government bears the burden of proving, by clear and convincing evidence, that he is a danger to the community or a flight risk, and that no conditions other than his detention would be sufficient to prevent those harms. Pinchi v. Noem, 2025 WL 2084921, at *7.

Finally, the government raises several jurisdictional hurdles, but none bar the relief Petitioner seeks under the due process clause. As the Ninth Circuit has explained, "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017). And "[a]lthough § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law." Singh v. Holder, 638 F.3d 1196, 1201 (9th Cir. 2011).

The government's arguments also miss the mark in characterizing Petitioner's requested relief. As discussed above, there is a marked difference between a pre- and post-deprivation remedy. Petitioner is not so much appealing the immigration judge's detention decision 34 days after his apprehension, as the government's decision to detain (and continue to detain) him without a pre-deprivation hearing. Likewise, Petitioner is not challenging the order of removal itself (which is currently stayed pending appeal), but his continued detention subsequent to rearrest.

**B.    Irreparable harm**

Petitioner is suffering irreparable harm because Petitioner is likely being detained in violation of his constitutional rights. "It is well established that the deprivation of constitutional

---

[3] Indeed, while there are scant details about the hearing before the immigration judge, it has been the government's position in other cases involving rearrest that petitioners are not entitled to any hearing for up to six months after hearing. Guillermo M. R. v. Kaiser, 2025 WL 1983677, at *1 (N.D. Cal. July 17, 2025).

rights 'unquestionably constitutes irreparable injury.'" Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)).

Additionally, Petitioner has explained he is the sole financial provider for his family, which is likely to suffer continued harm in his absence. As the Ninth Circuit has explained, "immigration detention" results in "subpar medical and psychiatric care . . . , [] economic burdens . . . on detainees and their families . . . , and [] collateral harms to children of detainees." Hernandez, 872 F.3d 976, 995 (9th Cir. 2017).

**C.    Balance of equities and public interest**

Where the government is the opposing party, balancing of the equities and the public interest merge. See Nken v. Holder, 556 U.S. 418, 435 (2009). Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction. Winter, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention." Vargas v. Jennings, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). And the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." Zepeda v. U.S. Immigr. & Nat. Serv., 753 F.2d 719, 727 (9th Cir. 1983). Likewise, in the absence of an injunction, Petitioner is and will continue to experience prolonged detention, his children will remain without a parent, and his family will suffer significant financial consequence.

If Petitioner truly meets the constitutional requirements for civil immigration detention, any harm to the government should be minimal. He has not been shown to be a flight risk or a danger to the community, and the government can provide him notice and a hearing before a neutral arbiter before any rearrest.

Due to the minimal harms suffered by the government, the Court will not require a security.

//
//
//
//
//
//
//
//
//
//
//

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Petitioner's Application and **ISSUES** a preliminary injunction. (Dkt. No. 5.) The Respondents are **ORDERED** to immediately release Petitioner from their custody. Respondents are **ENJOINED AND RESTRAINED** from detaining Petitioner without notice and a pre-detention hearing where the government bears the burden of proving, by clear and convincing evidence, that the circumstances have changed as to his danger to the community or a flight risk, and that no conditions other than his detention would be sufficient to prevent those harms. <u>Pinchi</u>, 2025 WL 2084921, at *7. If the Ninth Circuit modifies its stay of removal, the parties can return to the Court to request a modification to the injunction.

**IT IS SO ORDERED.**